IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Jamie Mangum,                                    Case No. 3:14 CV 1402

                              Plaintiff,         MEMORANDUM OPINION
                                                 AND ORDER
                   -vs-
                                                 JUDGE JACK ZOUHARY
Gary Repp, et al.,

                              Defendants.

## INTRODUCTION

Jamie Mangum brought this Section 1983 action against Defendants Jason Wise, Ray Bowman, and Gary Repp, former employees of the Marion Juvenile Correctional Facility. Mangum alleges that Defendants deprived him of his Eighth Amendment rights by failing to protect him from sexual assault by a fellow inmate. Defendants move for summary judgment (Doc. 43), and Mangum opposes (Doc. 54).

## BACKGROUND

Mangum was committed to the custody of the Ohio Department of Youth Services (DYS) in early 2007. DYS placed Mangum, then age twelve, in the Intensive Medical Health Unit (also known as "4-B") at the Marion Juvenile Correctional Facility (Doc. 43-1, Ex. A at 2). As Marion's smallest unit, 4-B housed youths with serious mental health needs. Mangum met weekly with Defendant Jason Wise, who worked on the unit as a psychology assistant.

On March 1, Mangum told Wise that another youth, Darrel Saxon, was sexually targeting him. Wise wrote a note to his supervisor warning her of the allegation (*id.* at 35). On March 8, Wise reported that Mangum had alleged Saxon threatened to rape him in the bathroom (*id.* at 36). Three days later, Saxon was placed in isolation after a scuffle with Mangum (Doc. 54-2, Ex. B at 1). According to Saxon, Defendant Bowman visited him after the incident, told him that Mangum had accused him of asking Mangum for sex, and warned him to stay away from Mangum (Doc. 54-3, Ex. C at 15). Bowman, who worked as 4-B's unit manager at the time, confirmed having a conversation with Saxon to that effect (*id.* at 2). At some point, another youth reported to Defendant Repp, a correctional officer on the unit, that he had seen Mangum and Saxon "doing something in the utility closet" (Doc. 57-1, Dep. Exs. at 185).

On March 13, Wise wrote his supervisor that Saxon admitted Mangum had agreed to give him oral sex to pay gambling debts (Doc. 43-1, Ex. A at 37). One week later, Mangum disclosed to Wise that Saxon had forced Mangum to perform oral sex "multiple times with the last time occurring a few days ago" (Doc. 43-3, Ex. C at 27). Mangum has never recalled the exact dates on which the assaults occurred. After investigations by DYS and the Ohio State Highway Patrol, Saxon was tried and convicted of raping Mangum. *See State v. Saxon*, 2008-Ohio-5402 (Ct. App.). Mangum, Wise, and Repp testified at the trial in November 2007.

## STANDARD OF REVIEW

Summary judgment is appropriate if there is "no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Federal Civil Rule 56(a). When considering a motion for summary judgment, this Court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 587 (1986). It may not weigh the evidence or make credibility judgments. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). But "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Expert Masonry, Inc. v. Boone Cty, Ky.*, 440 F.3d 336, 341 (6th Cir. 2006) (internal quotation marks omitted).

### DISCUSSION

Defendants contend summary judgment is appropriate for two reasons. First, they argue Mangum has failed to marshal enough evidence to create a genuine dispute of material fact as to whether Defendants violated Mangum's Eighth Amendment rights. Second, they maintain that the equitable doctrine of laches bars Mangum from any legal relief.

**Eighth Amendment Deliberate Indifference**

The Eighth Amendment confers on prison officials a duty "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks omitted). Failure-to-protect claims are governed by the familiar deliberate indifference framework. To prevail, Mangum must first show he was exposed to a substantial risk of harm. He must then show that each Defendant was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, each Defendant actually drew the inference, and each Defendant consciously disregarded the risk. *Id.* at 836–37. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Though Defendants suggest Mangum may have fabricated his allegations, he produced evidence showing he was exposed to a substantial risk of harm, reflected in the records of the DYS

and Highway Patrol investigations as well as Saxon's conviction. With this realization, Defendants direct their focus on the subjective component as to each Defendant; namely, what each knew and what each did.

*Defendant Wise*. Defendants argue that the timeline of the assaults rules out any possibility of wrongdoing by Wise, then a psychologist on Unit 4-B. They point to Mangum's testimony at Saxon's 2007 trial, in which he claimed the final assault occurred "like a week -- three weeks before [he] talked to Dr. Wise" (Doc. 43-7, Trial Tr. at 142). When asked to clarify, Mangum confirmed it was more like three weeks (*id.*). In his later deposition, Mangum claimed he was confused at trial, and that the final assault occurred "like a week" before he talked to Wise (Doc. 43-6, Mangum Dep. at 119). He further testified that he "talked to Dr. Wise, and [an assault] happened after that" (Mangum Dep. at 184–85). According to Wise's March 20, 2007 incident statement, Mangum relayed the last assault had occurred only "a few days" before (Doc. 43-3, Ex. C at 27). If, as Mangum now alleges, Saxon assaulted him only a week before he told Wise on March 20, Wise knew of the risk before the final assault occurred. *Coble v. City of White House, Tenn.*, 634 F.3d 865, 870 (6th Cir. 2011) ("We allow cases to proceed to trial even though a party's evidence is inconsistent, because in reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited." (internal quotation marks omitted)).

But no matter which recollection is accepted, the record establishes that Wise took reasonable measures to protect against the risk of assault. The paper trail shows Wise alerted his superiors to the threats through a series of clinical notes, incident statements, and risk assessment updates (*see* Doc. 43-1, Ex. A at 35–38; Doc. 43-2, Ex. B at 7–8). In doing so, Wise complied with DYS policy and discharged any duty he had to protect Mangum, particularly given Mangum's denial of any sexual

4

contact at that point.  Wise also placed Mangum on a series of increasingly restrictive safety plans during this time that included fifteen-minute safety checks, an assigned seat near the instructor during classroom activities, and a requirement that Mangum stay within arm's reach of a corrections officer during line movements (s*ee* Doc. 43-1, Ex. A at 18–35).  Mangum does not suggest Wise had any reason to think these safety plans were not being followed.

Still, Mangum maintains that Wise should have done more.  He alleges Ohio's mandatory-reporting law required Wise to share with the Highway Patrol any knowledge or reasonable suspicion that Mangum had suffered or faced a threat of suffering any physical or mental wound.  *See* OHIO REV. CODE §§ 2151.421, 5120.173.  Had Wise followed the prescribed reporting structure, Mangum contends the Highway Patrol would have investigated the threat and potentially prevented the second assault.  Wise recognized he was a mandatory reporter, but felt he had no obligation to report the threats to the Highway Patrol in the absence of any evidence or suggestion an assault had actually occurred at that point (Doc. 55 at 149–50).

Mangum, at most, shows a triable issue as to whether Wise discharged his duties under Ohio law.  *See, e.g.*, *Doe v. Roman*, 2002-Ohio-6671, at ¶ 36 (Ct. App.) (finding a genuine factual dispute as to whether defendants were obligated to report sexual abuse allegations where victim denied any contact had occurred).  But Ohio's reporting statute does not define the contours of deliberate indifference under the Eighth Amendment.  "Deliberate indifference is characterized by obduracy or wantonness -- it cannot be predicated on negligence, inadvertence, or good faith error."  *Reilly v. Vadlamudi*, 680 F.3d 617, 624 (6th Cir. 2012) (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).  Given the warnings and safety plans Wise sent his superiors, a jury could not reasonably find he obdurately or wantonly disregarded the risk Saxon posed.

5

**Defendant Bowman**.  Defendants contend that former unit manager Bowman is also entitled to summary judgment because the record fails to show that he was deliberately indifferent.  The parties dispute whether Bowman was 4-B's unit manager in early 2007 and whether he knew about the threats before the last assault occurred.  Even resolving those disputes in Mangum's favor, he cannot show Bowman intentionally disregarded the risk Saxon posed.  Mangum conceded at his deposition that he never told Bowman he had been assaulted (Mangum Dep. at 12–13).  When asked what more Bowman should have done beyond reprimanding Saxon, Mangum suggested Bowman should have moved him off the unit (*id.* at 187–88).  According to DYS policy, however, only the Clinical Services Director, the Psychology Supervisor, and the Program Deputy had authority to transfer youths on or off Unit 4-B (*see* Doc. 63-1 at 2–4; Doc. 63-2 at 2).

And to the extent Mangum seeks to hold Bowman liable simply by virtue of his supervisory status, this claim too fails.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) ("A supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some way directly participated in it.").  In short, Mangum fails to identify any reasonable measure Bowman should have taken to protect him.  That Bowman might have done more is not enough; Mangum has not produced evidence that would allow a jury to conclude Bowman wantonly disregarded the risk Saxon posed.

**Defendant Repp**.  Defendants argue Mangum's claim against former juvenile correctional officer Repp amounts to a threadbare assertion that he did not follow proper policies and procedures.  Mangum could not recall whether Repp was on duty when the assaults occurred or identify any policy Repp failed to follow (Mangum Dep. at 11–12, 77–78, 126).  The only evidence showing Repp knew of the assaults is found in the 2007 trial testimony of another youth, who told Repp he had seen

6

Mangum and Saxon "doing something in the utility closet" (Doc. 57-1, Dep. Exs. at 185). Repp denied any such conversation (Doc. 57 at 82–83). Assuming, as this Court must, that the youth reported the incident to Repp, Mangum's claim nonetheless fails. This is because a jury could not reasonably conclude Repp drew the inference that Saxon posed a sexual threat to Mangum from the vague statement that they were "doing something" in the utility closet.

**Laches**

Given that Defendants are entitled to judgment as a matter of law on Mangum's constitutional claims, this Court need not address whether laches bars Mangum from legal relief.

### CONCLUSION

This Court has given Mangum the benefit of the doubt on the evidentiary record. Even so, with the higher legal hurdle for an Eighth Amendment claim, this record does not support the continuation of this case. For the foregoing reasons, this Court grants Defendants' Motion for Summary Judgment (Doc. 43).

IT IS SO ORDERED.

_____s/ *Jack Zouhary*_____
JACK ZOUHARY
U. S. DISTRICT JUDGE

October 23, 2015

7